## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CHRISTINA RONALDSON,** | ) | |
| **2023 Maynard Drive** | ) | |
| **Falls Church, VA 22043,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No.** |
| | ) | |
| **NATIONAL ASSOCIATION** | ) | |
| **OF HOME BUILDERS,** | ) | |
| **1201 15ᵗʰ STREET, N.W.** | ) | |
| **Washington, D.C. 20005,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

## PRELIMINARY STATEMENT

1.)     Christina Ronaldson, the plaintiff in this action, was formerly employed by the National Association of Home Builders ("NAHB") as the Director of NAHB's revenue-generating Affinity Programs.  NAHB is a non-profit organization with over 140,000 members that engages in wide-ranging activities with the overall purpose of promoting home ownership and home building.  Its members are responsible for approximately 80% of new single-family home construction annually in the United States.  NAHB's annual revenue recorded on its last public Form 990 tax exempt return with filed with the Internal Revenue Service exceeded $65 million.

2.)     NAHB derives its revenue in a variety of ways which include, among others, membership dues and contributions, advertisements in NAHB publications and at NAHB events, licenses of NAHB logos and intellectual property, and sponsorships of NAHB events and

programs including the NAHB International Builders' Show, the world's largest show promoting the residential and light commercial construction industry.

3.)     As Director of Affinity Programs, Ms. Ronaldson was responsible for generating revenue for NAHB by creating national partnerships between NAHB and corporations with significant financial interests in the home building industry by marketing products and services to NAHB members, including builders, contractors and sub-contractors, and banks.  The Affinity Programs generated revenue for NAHB by payments of flat fees and per centages of sales of products and services through these partnerships.

4.)     Ms. Ronaldson's wages with NAHB were set annually.  Insofar as is relevant here, Ms. Ronaldson's wages were comprised of a base salary and an Incentive Compensation Plan, one component of which provided for the payment of incentive bonuses or commissions based on a formula tied to Affinity Department annual net revenue goals set by NAHB in advance of each year.

5.)     In 2016, Ms. Ronaldson was responsible for generating sales of approximately $2,758,562.00 through the NAHB Affinity Programs, and net revenue of $1,374,664.00.  These amounts vastly exceeded NAHB's 2016 projections of Affinity Programs gross revenue of $1,670,000.00 and net revenue of $530,120.00, requiring payment of a commission under the Incentive Compensation Plan that NAHB set for Ms. Ronaldson for that year.

6.)     One of the largest sales generated by Ms. Ronaldson for the Affinity Programs in 2016 was attributable to gross revenue in the amount of $879,028.80 paid by the Lowe's Companies for its annual royalty payments for use of NAHB intellectual property ("the Lowe's sale" or "the sale").

7.)     On June 27, 2017, NAHB paid Ms. Ronaldson $26,010.86 in an incentive bonus that included some, but not all, of the commissions for Affinity Program sales she earned in 2016.

8.)     NAHB did not include in this or any other payment any incentive bonus or commission based on revenue generated by the Lowe's sale.

9.)     Under the terms of her Incentive Compensation Plan with NAHB, Ms. Ronaldson was entitled to an additional commission from NAHB on the Lowe's sale in an amount greater than $46,000.00.

10.)    Without paying Ms. Ronaldson the full commission to which she was entitled for the Lowe's sale, and either despite or because of Ms. Ronaldson's extraordinary success as Director of Affinity Programs, NAHB terminated Ms. Ronaldson's employment, effective August 18, 2017.   NAHB's principal alleged reason for terminating Mr. Ronaldson was that she supposedly did not communicate effectively NAHB staff and vendors.   In point of fact, Ms. Ronaldson had only one person on her staff; NAHB's annual appraisals of Ms. Ronaldson before her termination lauded Ms. Ronaldson's communication skills; and Ms. Ronaldson, dramatically increased sales for NAHB in 2015 and 2016 as Director of Affinity Programs.

12.)    This action arises under the District of Columbia Payment and Collection of Wages Law, D.C. Stat. Ann.§§32-1301 et seq. ("the DCPCWL"), and seeks to recover the commission due Ms. Ronaldson for the NAHB Affinity Program Lowe's sale; an accurate accounting of all net sales revenue generated by the NAHB Affinity Programs from January 1, 2016, through December 31, 2017, and NAHB's net revenue targets for 2016 and 2017; back wages for all unpaid commissions due Ms. Ronaldson and liquidated triple damages for all unpaid commissions due Ms. Ronaldson under the DCPCWL, a total amount not less than $184,000.00; and attorneys' fees and costs.

## PARTIES, JURISDICTION, AND VENUE

13.)    Plaintiff Christina Robinson was, at all times relevant, employed by defendant NAHB as its Director of Affinity Programs.  During her employment with NAHB, plaintiff was stationed at NAHB headquarters in this judicial district, where she performed and should have been paid to perform all the work that is the subject of this action.  Ms. Ronaldson is a citizen of the Commonwealth of Virginia and resides at the address recited in the caption of this Complaint.

14.)    Defendant NAHB is an IRS approved non-profit, tax exempt organization that was incorporated in the state of Nevada and has its principal place of business in this judicial district at the address recited in the caption of this Complaint.  NAHB was Ms. Ronaldson's employer at all times relevant and unlawfully failed to pay Ms. Ronaldson the wages that are at issue in this suit.  According to its last electronic, publicly available IRS Form 990 return for corporations exempt from federal taxation under Sections 501(c), 527, and 4957 of the Internal Revenue Code, in 2016, NAHB had over 850 board members and over 1100 employees and volunteers, and generated over $65 million in revenue.  In the period of Ms. Ronaldson's employment, NAHB had at least between 250 and 300 employees and approximately 2,000 members on its board of directors, and generated between $50 million and $100 million dollars in revenue, much if not most of it in the District of Columbia.

15.)    Jurisdiction of this Court is based on 28 U.S.C. §1332, because the parties are of diverse citizenship and more than $75,000.00, exclusive of interest and costs, is at issue in this suit.  Venue lies in this judicial district under 28 U.S.C. §1391 and because NAHB is subject to personal jurisdiction in the District of Columbia under D.C. Stat. Ann. §13-422, §13-423. NAHB's principal office is located in the District of Columbia, where NAHB does substantial

business continuously and systematically and where the events and omissions giving rise to plaintiff's claims occurred.

## STATEMENT OF FACTS

### Background

16.)   Plaintiff Christina Ronaldson was first employed by defendant NAHB as the Director of its Affinity Programs on December 7, 2009.  In that position, Ms. Ronaldson was responsible for generating revenue through creating national partnerships to generate sales of a wide range of such products to NAHB members, affiliates, and employees including, among other products, work vehicles, building materials and computers.  Ms. Ronaldson was also tasked with promoting sponsorship of NAHB events, inclusive of digital advertising and exhibit sales.  Ms. Ronaldson's position was in NAHB's Publishing & Affinity Programs Department.  Throughout her employment with NAHB, Ms. Ronaldson's wages were a combination of an annual salary and commissions or bonuses on the revenue she generated as Director of Affinity Programs.[1]

17.)   On August 15, 2015, NAHB issued a new position description for the Director of Affinity Programs held by Ms. Ronaldson.  This new PD identified revenue development and revenue sharing as comprising 70% of the essential functions of Ms. Ronaldson's position.

18.)   Ms. Ronaldson's annual NAHB performance review for that year was at the "Successful Plus" level, one of the highest rating levels for an NAHB employee at Mr. Ronaldson's level.  Ms. Ronaldson's review at that level was based upon recognition of Ms. Ronaldson for "the complexity of the programs she manages and of the efforts she put forth to ensure their success," that she "work[ed] diligently with [NAHB] affinity vendors," and that Ms. Ronaldson's manager

---

[1]   Two components of Ms. Ronaldson's compensation were based on sales revenue generated outside of the Affinity Programs and are not at issue in this action.  Nor is NAHB's payment of Ms. Ronaldson's base salary.

expected that she would "build stronger relationships with current vendors and develop new high value vendors for NAHB" in "the coming year."  The review was also based on recognition of Ms. Ronaldson's accomplishments as a manager who "leads by example," and "[e]xhibits a professional NAHB image" inside and outside the organization, and "[e]stablishes and maintains good rapport by promoting mutual respect and understanding."

19.)    The expectations of Ms. Ronaldson's managers for her continued superior performance and contribution to increasing Affinity Programs' revenue were borne in 2016. Despite the fact that NAHB did not pay Ms. Ronaldson the bonus due her for the Lowe's sale and perhaps other sales in 2016, on June 27, 2016, NAHB paid Ms. Ronaldson a bonus of $26,010.86 for that year.  That partial bonus for 2016 and the $29,528.50 Affinity Program bonus NAHB paid Ms. Ronaldson for 2015 were each many times greater than the commissions Ms. Ronaldson earned previously during her career at NAHB.

20.)    In addition, on December 26, 2016, Ms. Ronaldson received a salary increase retroactive to September 5, 2016..

### NAHB's Failure To Pay Ms. Ronaldson's Incentive Commission On The Lowe's Sale

21.)    During Ms. Ronaldson's employment with NAHB, as noted above, Ms. Ronaldson's wages were a combination of an annual salary and an incentive bonus or commission calculated by a formula that NAHB set in advance annually.[2]

22.)    Beginning no later than January 1, 2016, Ms. Ronaldson's Affinity Programs incentive bonuses were based on a formula tied to projections of net revenue that NAHB set in the preceding year or at the outset of each year.  For both 2016 and 2017, NAHB agreed to pay Affinity

---

[2]    As explained in note 1 earlier, Ms. Ronaldson's wages also included commissions based on sales that were unrelated to Affinity Programs.

Programs incentive bonuses to Ms. Ronaldson when Affinity Programs net revenue reached 90% of its projected target.  Ms. Ronaldson's incentive bonuses and commissions doubled when net revenue reached or exceeded 100% of NAHB's projected target.  Unlike previous years, Mr. Ronaldson was not required to be employed by NAHB when incentive bonuses were calculated or paid.

23.)    In 2016, as Director of NAHB's Affinity Programs, Ms. Ronaldson generated the Lowe's sale for that year's annual NAHB royalty payments for use of NAHB intellectual property.

24.)    The revenue generated for NAHB from the Lowe's sale was not less than $879,028.80.

25.)    Lowe's made two payments for this sale in 2017, both while Ms. Ronaldson was employed by NAHB as Director of Affinity Programs.

24.)    NAHB uses accrual-basis accounting based on a calendar year for financial and tax purposes, and it used accrual-basis accounting beginning no later than January 1, 2016, and continuing through the termination of Ms. Ronaldson's employment on August 18, 2017.

25.)    Under the accrual based system of accounting, as a general practice, revenue is recorded for financial purposes including taxation as income in the year in which income is earned, including when a sale is placed, regardless of whether it is paid in the same year.

26.)    Under the accrual-basis financial and tax accounting, the $879,028.80 in revenue Ms. Ronaldson generated revenue for the NAHB Affinity Programs from the Lowe's sale was attributable to be recognized in 2016.

27.)    On June 27, 2017, NAHB paid Ms. Ronaldson $26,010.86 as an incentive bonus commission for Affinity Program sales she made in 2016 based on revenue it reported as having accrued in 2016.

28.)    On or before paying plaintiff that bonus on June 27, 2016, NAHB had either calculated the net revenue generated by Affinity Programs in 2016 and determined that it was 90% or more of the net revenue target established by NAHB for the Affinity Programs for that year; or had the information and documentation necessary to make that calculation.

29.)    The payment by NAHB to Ms. Ronaldson on June 27, 2017, did not include any bonus or commission on the $879,028.80 in revenue generated by the Affinity Programs from the Lowe's sale in 2016.

30.)    Ms. Ronaldson was entitled to an additional commission from NAHB on the Lowe's sale in an amount not less than $46,149.01, utilizing the 5.25% rate applied by NAHB in calculating the commission it did pay Ms. Ronaldson.

31.)    NAHB did not pay Ms. Ronaldson any bonus or commission due her for the Lowe's sale as Director of Affinity Programs before or after terminating her employment effective August 18, 2017.

32.)    On information and belief, NAHB did not pay Ms. Ronaldson the total amount of commissions due her as Director of Affinity Programs for sales in 2016 and 2017 before or after terminating her employment effective August 18, 2017.

## COUNT I
### (Violation of the DCPCWL)

33.)    Plaintiff repeats the allegations of paragraphs 1 through 32 above, as though fully set forth here.

34.)    From November 20, 2009, through August 18, 2017, plaintiff was employed by defendant as Director of Affinity Programs.

35.)    As defendant's Director of Affinity Programs, plaintiff's wages were comprised of a base salary, incentive bonuses or commissions due upon revenue generated from sales of Affinity Programs' products, and commissions, in addition to revenue generated from other NAHB programs that is not relevant to this proceeding.

36.)    Plaintiff's incentive bonuses or commissions for revenue generated by Affinity Programs in 2016 and 2017 were based on net revenue targets that defendant projected at the outset of each of those years or in the preceding years.

37.)    During that period, Ms. Ronaldson was owed incentive bonuses or commissions from defendant when net revenue generated by Affinity Programs met or exceeded 90% of the net revenue target defendant set for a given year.  The amount of incentive bonuses and commissions increased when net Affinity Programs revenue met or exceeded 100% of the target.

38.)    On June 27, 2017, defendant paid plaintiff $26,010.86 in an incentive bonus commission for Affinity Program sales she made in 2016 based on revenue it recognized as having accrued in 2016.

39.)    On or before paying plaintiff that bonus on June 27, 2016, defendant either had calculated the net revenue generated by Affinity Programs in 2016 and determined that it met or exceeded 90% of the net revenue target established by defendant for the Affinity Programs for that year; or had available to it all information necessary to determine that the net revenue generated

9

by Affinity Programs in 2016 met or exceeded 90% of the net revenue target established by defendant for the Affinity Programs for that year,.

40.)    The payment by defendant to plaintiff on June 27, 2017, did not include any bonus or commission on the $879,028.80 in revenue generated by the Affinity Programs from the Lowe's sale in 2016.

41.)    All of the revenue on the Lowe's sale in 2016 exceeded the net revenue target set by defendant for Affinity Programs for that year.

42.)    The rate used to determine plaintiff's incentive bonus commission on the Lowe's sale would be no less than 5.25%, because that was the overall rate applied by defendant in calculating the incentive bonus or commission defendant did pay plaintiff for 2016.  Some portion of the incentive bonus or commission that defendant did pay to plaintiff must have been calculated on Affinity Programs' net revenue that was between 90% and 99.99% of the 2016 net revenue target for that year.  That rate would increase once net revenue was at least 100% of the net revenue target.  Under this methodology, the rate at which the incentive bonus or commission due plaintiff for the Lowe's sale could not have been lower than the overall 5.25% rate applied by defendant in paying plaintiff an incentive bonus that did not include an incentive bonus or commission on the Lowe's sale.

42.)    Using that 5.25% rate, plaintiff was entitled to an additional incentive bonus or commission from defendant on the Lowe's sale in an amount not less than $46,149.01.

43.)    In 2017, as in 2016, on information and belief, Affinity Programs net revenue reached or exceeded 90% of exceeded the net revenue target set by defendant for Affinity Programs for that year.

44.)     Defendant did not pay plaintiff the bonus or commission due her for the Lowe's sale before or after terminating her employment effective August 18, 2017.

44.)     By failing to pay plaintiff the incentive bonus or commission due her on the Lowe's sale in an amount not less than $46,149.01, defendant violated the DCPCWL, D.C. Stat. Ann.§§32-1301 et seq.

45.)     Defendant is liable to plaintiff in an amount equal to or greater than $184,776.04, which is comprised of the amount of back wages defendant withheld from plaintiff in the form of incentive bonuses or commissions due plaintiff on the Lowe's sale, plus liquated damages in triple that amount under the DCPCWL, D.C. Stat. Ann.§32-1308.

46.)     On information and belief, defendant did not pay plaintiff the total amount of incentive bonuses and commissions due her as Director of Affinity Programs for sales in 2016 and 2017 sale in addition to the bonus or commission due Mr. Ronaldson for the Lowe's sale, before or after terminating her employment on August 18, 2017, and is liable to plaintiff in that amount, which will be determined during the course of this proceeding, plus liquated damages in triple that amount under the DCPCWL, D.C. Stat. Ann.§32-1308.

47.)     By failing to pay plaintiff the total amount of incentive bonuses and commissions due her as Director of Affinity Programs for sales in 2016 and 2017 sale in addition to the bonus or commission due plaintiff for the Lowe's sale before or after terminating her employment effective August 18, 2017, defendant violated the DCPCWL, D.C. Stat. Ann.§§32-1301 et seq.

45.)     Defendant is liable to plaintiff in an amount to be determined during this proceeding equal to the back wages defendant failed to pay plaintiff in the form of incentive bonuses or commissions due plaintiff for sales in 2016 and 2017 in addition to bonuses or commissions due

plaintiff for the Lowe's sale, before or after terminating her employment effective August 18, 2017, plus liquidated damages in triple that amount.

## PRAYER FOR RELIEF

Wherefore, plaintiff Christina Ronaldson respectfully requests that the Court enter judgment in her favor and award her the following relief.

A.     An Order declaring that defendant violated plaintiff's rights under the District of Columbia Payment and Collection of Wages Law, D.C. Stat. Ann.§§32-1301 et seq.

B.     An accurate accounting of all net sales revenue generated by the NAHB Affinity Programs from January 1, 2016, through December 31, 2017; and NAHB's net revenue targets for 2016 and 2017.

C.     Back wages in the amount of incentive bonuses and commissions defendant failed to pay plaintiff as Director of defendant's Affinity Programs from January 1, 2016, through August 18, 2017, including, but not limited to, the incentive bonus and commission the attributable to the Lowe's Companies payment for its annual royalty payments to defendant, in an amount greater than $46,000.00 to be determined in the course of this action.

D.     Liquidated triple damages upon all back wages defendant failed to pay plaintiff as Director of defendant's Affinity Programs, in an amount greater than $138,000.00 to be determined in the course of this action.

E.     Attorneys' fees at the rates specified in the District of Columbia Payment and Collection of Wages Law, D.C. Stat. Ann. §32-1308(b)(1) and costs.

F.     Such other relief as may be appropriate.

Respectfully submitted,

_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100


_____
Charlene Bofinger, Esq.
  D.C. Bar No. 368879
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200


_____
Omar Vincent Melehy, Esq.
  D.C. Bar No.: 415849
Melehy & Associates LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
(301) 587-6364


Counsel for Plaintiff