UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHRISTINA RONALDSON,
      Plaintiff,

   v.

NATIONAL ASSOCIATION OF HOME
BUILDERS,
      Defendant.

Civil Action No. 19-1034 (CKK)

**Memorandum Opinion**
(November 18, 2020)

In her Amended Complaint, Ms. Christina Ronaldson ("Plaintiff") asserts claims against her former employer, National Association of Home Builders ("NAHB" or "Defendant"), under the District of Columbia Wage Payment and Collection Law, D.C. Code §§ 32–1301 *et seq.*, ("DCWPCL"), and the common law doctrine of unjust enrichment. As discussed herein, Ms. Ronaldson's claims focus on the size of her 2016 incentive commission from NAHB and the method by which NAHB calculated that incentive commission. NAHB has now moved to dismiss Ms. Ronaldson's DCWPCL and unjust enrichment claims as a matter of law under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, Federal Rule of Civil Procedure 12(c). *See* Def.'s Mot., ECF No. 43.

Upon consideration of the briefing, the relevant authorities, and the record as a whole,[1] the Court **GRANTS** NAHB's motion as to Ms. Ronaldson's DCWPCL claim in Count I of the

---

[1] The Court's consideration has focused on the following briefing and material submitted by the parties:
- Am. Compl., ECF No. 41;
- Def.'s Mem. of Law in Supp. of Mot. to Dismiss, or in the Alternative, for J. on the Pleadings ("Def.'s Mot."), ECF No. 43;
- Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 90;
- Def.'s Reply to Pl.'s Opp'n ("Def.'s Reply"), ECF No. 47; and,
- Pl.'s Sur-Reply to Def.'s Reply ("Pl.'s Sur-Reply"), ECF No. 64.

1

Amended Complaint and **DISMISSES** that claim **WITH PREJUDICE**. *See* Am. Compl. ¶¶ 37–53. The Court, however, **DENIES** NAHB's motion to dismiss Ms. Ronaldson's claim for unjust enrichment in Count II of the Amended Complaint. *See id.* ¶¶ 54–59.

## I. BACKGROUND

"NAHB is a non-profit organization with over 140,000 members that engages in wide-ranging activities with the overall purpose of promoting home ownership and home building." Am. Compl. ¶ 1. NAHB's "members are responsible for approximately 80% of new single-family home construction annually in the United States." *Id.* Of note in this case, NAHB generates revenue "in a variety of ways which include . . . membership dues and contributions, advertisements in NAHB publications and at NAHB events, licenses of NAHB logos and intellectual property, and sponsorships of NAHB events and programs." *Id.* ¶ 2.

Beginning in December 2009, Christina Ronaldson began working at NAHB "as the Director of NAHB's revenue-generating Affinity Programs." *Id.* ¶ 1; *see also id.* ¶ 16. "The Affinity Programs generated revenue for NAHB by payments of flat fees and percentages of sales of products and services through [NAHB] partnerships." *Id.* ¶ 3. As director of the Affinity Programs, "Ms. Ronaldson was responsible for generating revenue for NAHB by creating national partnerships between NAHB and corporations with significant financial interests in the home building industry by marketing products and services to NAHB members, including builders, contractors and sub-contractors, and banks." *Id.* Plaintiff alleges that she was successful in her role as the Affinity Programs director. In particular, she alleges that NAHB gave her a positive employee review in 2015, in recognition of "the complexity of the programs she manage[d] and of the efforts she put forth to ensure their success." *Id.* ¶ 18. Plaintiff's 2015 NAHB review also

noted that she "work[ed] diligently with [NAHB] affinity vendors" and promoted "a professional NAHB image." *Id.*

Throughout her tenure with NAHB, Plaintiff's compensation "comprised . . . a base salary and an Incentive Compensation Plan" (the "Incentive Plan"). *Id.* ¶ 4; *see also id.* ¶ 16. Under her annual Incentive Plans, Plaintiff had the opportunity to receive an incentive commission "based on a formula tied to Affinity Department annual net revenue goals set by NAHB in advance of each year." *Id.* ¶ 4. More specifically, NAHB would pay Plaintiff an incentive commission "when Affinity Programs net revenue" for the prior year "reached 90% of its projected target," and an even larger commission "when net revenue reached or exceeded 100% of NAHB's projected target" for the year. *Id.* ¶ 22; *see also* Pl.'s Opp'n, Att. C at Ex. I (2016 Incentive Plan). In calculating these annual revenue totals, NAHB allegedly employed an "accrual-based" accounting system, which recognized revenue for the fiscal year "in which the income is earned," irrespective of whether the customer had paid for the product or service rendered in that same fiscal year. *Id.* ¶¶ 24–25.

Plaintiff's present claims against NAHB arise from a dispute regarding the calculation of Plaintiff's 2016 incentive commission. In their motion papers, both Plaintiff and Defendant have attached a copy of the operative 2016 Incentive Plan, which states that "[m]anagement reserves the right to amend, modify, or discontinue the Incentive Plan at any time." Pl.'s Opp'n, Att. C at Ex. I (2016 Incentive Plan); *see also* Def.'s Mot., Ex. 1 (2016 Incentive Plan). Nonetheless, Plaintiff alleges that her 2016 incentive commission was too low, because NAHB did not calculate her commission based upon the "gross revenue of approximately $2,758,562.00 that [she] generated for Affinity Programs in 2016, but rather a lower figure." Am. Compl. ¶ 42. Namely, Plaintiff alleges that NAHB did not account for the sales revenue she generated in 2016 through

3

an annual royalty payment received from Lowe's for the use of NAHB intellectual property. *See id.* ¶¶ 23, 45. Plaintiff asserts that the 2016 revenue from this Lowe's sale alone was no less than $879,028.80, *see id.* ¶ 24, and alleges that her 2016 incentive commission from the Lowe's sale, by itself, should have totaled at least $46,149.01, *see id.* ¶ 47. According to Plaintiff, however, NAHB did not consider the Lowe's sale when calculating her 2016 incentive commission. *See id.* ¶ 45. In sum, Plaintiff alleges that her 2016 incentive commission, received on June 27, 2017, did not reflect the full value of the revenue she had generated for NAHB in 2016. *See id.* ¶ 49.

NAHB ultimately terminated Plaintiff on August 18, 2017 because "she supposedly did not communicate effectively with NAHB staff and vendors." *Id.* ¶ 31. Plaintiff, however, alleges that her termination was pretextual. *See id.* ¶¶ 31–36. And even after her termination, Plaintiff allegedly did not receive any additional incentive commission payments to reflect the revenue earned from the 2016 Lowe's sale. *Id.* Consequently, Plaintiff now alleges that "[b]y failing to pay [her] the incentive bonus or commission due her on the Lowe's sale in 2016 alone in an amount not less than $46,149.01, [NAHB] violated the [DCWPCL]." *Id.* ¶ 50. Plaintiff also asserts a common law claim for unjust enrichment. Therein, she alleges that NAHB unjustly retained a financial benefit from the 2016 revenue she generated and, correspondingly, withheld a fair commission from her on that revenue. *See id.* ¶¶ 54–59.

In turn, NAHB has now moved to dismiss Plaintiff's operative complaint under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, Federal Rule of Civil Procedure 12(c), arguing that Plaintiff's claims for relief under the DCWPCL and the doctrine of unjust enrichment both fail as a matter of law. *See* Def.'s Mot. at 1–2. The briefing on Defendant's motion, which includes Plaintiff's sur-reply briefing, *see* Pl.'s Sur-Reply, ECF No. 64, has now closed. Accordingly, Defendant's motion is now ripe for this Court's review.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pled factual allegations. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). However, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Where the well-pled facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. Under Rule 12(b)(6), a court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a

court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. App'x. 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.").

Alternatively, "a movant is entitled to judgment on the pleadings under Rule 12(c) if it 'demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law.'" *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 30 (D.D.C. 2019) (quoting *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008)). "Rule 12(c) may serve as an 'auxiliary or supplementary procedural device to determine the sufficiency of the case before proceeding any further.'" *Jimenez*, 395 F. Supp. 3d at 30 (quoting 5C Charles A. Wright & Arthur Miller, Fed. Prac. & Proc. § 1367 (3d ed. 2019)).  Where it does—as in the present case—the applicable "standard of review is 'functionally equivalent' to that for a Rule 12(b)(6) motion." *Jimenez*, 395 F. Supp. 3d at 30 (quoting *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (explaining that "the requirements of *Iqbal* and *Twombly* . . . apply to a Rule 12(c) motion, which here is functionally equivalent to a Rule 12(b)(6) motion")).

### III.   DISCUSSION

Defendant has moved to dismiss Plaintiff's DCWPCL claim in Count I of the Amended Complaint, *see* Am. Compl. ¶¶ 37–53, as well as Plaintiff's claim for unjust enrichment in Count II of the Amended Complaint, *see id.* ¶¶ 54–59.  The Court will address each claim in turn.

**A. Count I – D.C. Wage Payment and Collection Law**

In Count I of the Amended Complaint, Plaintiff asserts a claim under the D.C. Wage Payment and Collection Law, D.C. Code §§ 32–1301 *et seq.*, ("DCWPCL"). *See* Am. Compl. ¶¶

37–53.  "The DCWPCL establishes requirements regarding how and when employers must pay their employees' wages [and] it establishes a framework for recovery against an employer who violates its provisions."  *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 134 (D.D.C. 2018) (quotation omitted); *see also Sivaraman v. Guizzetti & Assocs., Ltd.*, 228 A.3d 1066, 1071 (D.C. 2020).  In this case, Plaintiff specifically argues that § 13–1304 of the DCWPCL "provides [her] with [a] cause of action."  Pl.'s Opp'n at 11; *see also* Am. Compl. ¶¶ 37–53.  Section 13–1304 states that "[i]n case of a bona fide dispute concerning the amount of wages due, the employer shall give written notice to the employee of the amount of wages which he concedes to be due, and shall pay such amount . . . . "  D.C. Code § 32–1304.

Defendant argues, however, that Plaintiff's DCWPCL claim must fail as a matter of law because the incentive commissions she disputes do not constitute "wages" within the meaning of the DCWPCL.  *See* Def.'s Mot. at 4–5.  In full, the DCWPCL expressly defines "wages" as:

> [A]ll monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation. The term "wages" includes a: (A) Bonus; (B) Commission; (C) Fringe benefits paid in cash; (D) Overtime premium; and (E) Other remuneration promised or owed: (i) Pursuant to a contract for employment, whether written or oral; (ii) Pursuant to a contract between an employer and another person or entity; or (iii) Pursuant to District or federal law.

D.C. Code § 13–1301(3).  Importantly, a "discretionary payment" does not constitute a "wage" under the DCWPCL because such payments "are not *owed*, but are given only by leave of the employer."  *Dorsey v. Jacobson Holman, PLLC*, 756 F. Supp. 2d 30, 36 (D.D.C. 2010) (emphasis added), *aff'd*, 476 F. App'x 861 (D.C. Cir. 2012).  Whether a payment is "discretionary" turns on "the conditions set for the award of such compensation" and if "the former employee was actually

7

entitled or owed the payment." *Rothberg v. Xerox Corp.*, Civ. No. 12-617 (BAH), 2016 WL 10953882, at *16 (D.D.C. Feb. 3, 2016), *aff'd*, 709 F. App'x 1 (D.C. Cir. 2017).[2]

Two recent decisions from this jurisdiction, which this Court finds persuasive, help elucidate the line of demarcation between *discretionary* payments and *owed* wages, cognizable under the DCWPCL. In *Molock v. Whole Foods Mkt.*, Inc., 297 F. Supp. 3d 114 (D.D.C. 2018), Judge Amit Mehta considered whether a "Gainsharing program" for certain Whole Foods employees provided "wages" within the meaning of the DCWPCL. *Id.* at 119, 133–35. Under the Gainsharing program, Whole Foods allegedly "awarded bonuses to employees whose departments performed under budget by automatically distributing the surplus savings among the employees in that department." *Id.* at 119. Upon review of the pleadings, Judge Mehta held that the plaintiffs in *Molock* stated a claim for lost "wages" under the DCWPCL, because they "sufficiently alleged that payment of a Gainsharing bonus was not subject to any employer discretion, but rather *automatic and mandatory* upon satisfaction of the condition that the department in which [the] [p]laintiffs were employed obtained a surplus." *Id.* at 134 (emphasis added).

Conversely, Judge Royce Lamberth reached a different holding in *Brady v. Liquidity Servs., Inc.*, No. 18-CV-1040 (RCL), 2018 WL 6267766 (D.D.C. Nov. 30, 2018), when addressing

---

[2] Plaintiff notes that the trial court's decision in *Dorsey* came before the definition of "wages" in § 13–1301(3) of the DCWPCL was amended in 2013. *See* D.C. Law 20–61 § 2062(a); Pl.'s Opp'n at 14. But this fact does not undermine the viability of *Dorsey*'s holding that discretionary payments do not constitute wages under the DCWPCL. First, the amended definition of "wages" in the DCWPCL retains the requirement that a wage must be "*owed* by an employer." D.C. Code § 13–1301(3) (emphasis added). Moreover, the courts in this jurisdiction that have addressed the DCWPCL's amended definition of "wages" continue to recognize the rule that discretionary payments are not "owed" and are, therefore, not "wages" under the DCWPCL. *See, e.g.*, *Rothberg*, 2016 WL 10953882, at *16, *aff'd*, 709 F. App'x 1 (D.C. Cir. 2017) (applying *Dorsey* and finding that "no commission on [a] sale was 'owed by an employer' within the meaning of the [DCWPCL]"); *Bartolo v. Whole Foods Mkt. Grp., Inc.*, 412 F. Supp. 3d 35, 49 (D.D.C. 2019) ("Bonuses that are discretionary, and therefore not guaranteed compensation, do not fall under the definition of wages because they are not owed, but are given only by leave of the employer.") (quotation omitted). Plaintiff has provided no authority to the contrary, and, as such, the Court finds no basis to deviate from the rule in *Dorsey* against discretionary payments constituting "wages" under the DCWPCL.

a DCWPCL claim based on a bonus award allegedly owed to Mr. Daniel Brady by his former employer Liquidity Services, Inc. ("LSI"). There, Mr. Brady alleged that under the terms of his "offer letter," he had earned a bonus in 2016 of approximately $62,000 based on "qualitative and quantitative measures established by LSI." *Id.* at *1. Taking judicial notice of Mr. Brady's offer letter, which was referenced in Mr. Brady's complaint and "integral to his DCWPCL claim," *id.* at *4 n.1, Judge Lamberth observed that Mr. Brady's "target bonus" was "paid annually based on objectives set between [Mr. Brady] and [his] manager," *id.* at *4. And notably, Mr. Brady's offer letter expressly stated that "any provision[ ] contained herein may be modified and/or revoked without notice." *Id.* Ultimately, Judge Lamberth found that Mr. Brady *had not* stated a valid DCWPCL claim for his withheld bonus because "[e]ven if the Court were to find that the offer letter constituted a binding agreement, the bonus language in that letter appear[ed] discretionary and therefore not owed." *Id.*

In this case, Plaintiff ties her DCWPCL claim for lost "wages" to the 2016 incentive commission of $26,010.86 she received on June 27, 2017, *see* Am. Compl. ¶¶ 21–30, alleging that this payment was not a proper "Incentive Plan commission on all affinity sales made by her in 2016, among them the Lowe's sale for that year," *id.* ¶ 29. To that end, both parties have attached an identical copy of Plaintiff's 2016 Incentive Plan to their motion papers. *See* Def.'s Mot., Ex. 1 (2016 Incentive Plan); Pl.'s Opp'n, Att. C at Ex. I (2016 Incentive Plan).[3] In relevant part, this

---

[3] The Court may take judicial notice of the 2016 Incentive Plan without converting Defendant's Rule 12(b)(6) motion into a motion for summary judgment. When considering a motion to dismiss, courts may take judicial notice of documents "referred to in the complaint and integral to [the] claim" asserted, particularly where the document's "authenticity is not disputed." *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, the Amended Complaint refers to the 2016 Incentive Plan on multiple occasions, *see, e.g.*, Am. Compl. ¶¶ 4, 9, 22, 29, 35, 41, and both parties have separately appended that document in identical form to their motion papers, *see* Def.'s Mot., Ex. 1; Pl.'s Opp'n, Att. C at Ex. I. Moreover, the Court is not persuaded by Plaintiff's attempt to challenge the applicability or accuracy of the 2016 Incentive Plan. *See* Pl.'s Opp'n at 13–14. First, Plaintiff herself cites directly to the 2016 Incentive Plan in her opposition brief. *See id.* at

2016 Incentive Plan states that the "purpose of this plan is to compensate for the attainment of net revenue targets of Affinity Program net revenue," but it also clearly states that "[m]anagement reserves the right to amend, modify or discontinue this Incentive Plan at any time." *Id.* Given this plain language in the prefatory section of Plaintiff's 2016 Incentive Plan, the Court concludes that any payments thereunder were discretionary. *See Dorsey*, 756 F. Supp. 2d at 36.

Indeed, this discretionary language is comparable to the language Judge Lamberth evaluated in the offer letter at issue in *Liquidity Services Inc*, before dismissing the DCWPCL claim in that case. *See Liquidity Servs., Inc.*, 2018 WL 6267766, at *4 ("Furthermore, the offer letter states that 'any provision[ ] contained herein may be modified and/or revoked without notice.'"). Equally as important, the Court cannot conclude that Plaintiff's receipt of a 2016 incentive commission from NAHB was "automatic and mandatory," *Molock*, 297 F. Supp. 3d at 134, when management at NAHB expressly reserved the right to "amend, modify, or discontinue the Incentive Plan at any time," Pl.'s Opp'n, Att. C at Ex. I (2016 Incentive Plan). Consequently, the Court concludes that any commission Plaintiff received under her 2016 Incentive Plan was a "discretionary" payment and, therefore, did not constitute a "wage" within the meaning of the DCWPCL. D.C. Code § 13–1301(3). As such, Plaintiff's DCWPCL claim for lost wages under her 2016 Incentive Plan fails as a matter of law. *See Dorsey*, 756 F. Supp. 2d at 36 (dismissing DCWPCL claim based on discretionary payment); *Liquidity Servs., Inc.*, 2018 WL 6267766, at *4 (same).

---

14. And notably, Plaintiff included that 2016 Incentive Plan in her motion papers along with an affidavit from NAHB's Executive Vice President and Chief Financial Officer, swearing to its veracity. *See* Pl.'s Opp'n, Att. C (Decl. of E. Ramage). As such, the Court accepts the authenticity of the 2016 Incentive Plan, attached by Plaintiff herself. *See id.*

Finally, the Court notes that because Plaintiff's DCWPCL claim fails on the ground that Plaintiff's 2016 incentive commission was discretionary, the Court need not reach the parties' additional arguments regarding the size and calculation of that incentive commission. For example, the parties dispute whether the DCWPCL permits Plaintiff to challenge the disputed *amount* of her 2016 incentive commission. *See* Pl.'s Sur-Reply at 2 (citing *Fudali v. Pivotal Corp.*, 310 F. Supp. 2d 22, 27 (D.D.C. 2004)). But, as discussed above, Plaintiff's discretionary incentive commission was not a "wage owed," and is not, therefore, cognizable under the DCWPCL, regardless of whether that statute permits the recovery of disputed wages, as Plaintiff asserts. *See* Pl.'s Opp'n at 11 (refuting the argument that an "employer must pay only the undisputed wages to comply with the Act") (citing Def.'s Mot. at 10). Relatedly, Plaintiff argues at some length about the revenue NAHB should have recognized in 2016 under an accrual-based accounting system. *See* Pl.'s Opp'n at 18. Here again, however, even if NAHB had recognized additional 2016 revenue under an accrual-based accounting model, any commission for Plaintiff on that revenue and under her 2016 Incentive Plan would still have been *discretionary* and, therefore, not a cognizable "wage" under the DCWPCL. Accordingly, the Court need not resolve these matters to dispose of Plaintiff's DCWPCL claim as a matter of law.

For the reasons identified herein, the Court **GRANTS** Defendant's motion regarding Count I of the Amended Complaint and **DISMISSES** Count I of the Amended Complaint **WITH PREJUDICE**.[4]

---

[4] As discussed above, Plaintiff's DCWPCL claim turns on her 2016 incentive commission. But to the extent Plaintiff asserts a DCWPCL claim for commissions allegedly due to her on the basis NAHB's *2017* fiscal year revenues, such a claim falls short because Plaintiff has alleged no facts in the Amended Complaint that plausibly indicate that NAHB "owed" her any incentive commission on its 2017 revenues. D.C. Code § 13–1301(3). For example, Plaintiff has not alleged that NAHB offered her an Incentive Plan providing for commissions on final 2017 target revenues. And importantly, the Amended Complaint makes clear that NAHB terminated Plaintiff on August 18, 2017, shortly after she received her incentive commission for the 2016 fiscal year and well before any 2017 revenue calculations would have been finalized. *See* Am. Compl.

**B. Count II – Unjust Enrichment**

In Count II of the Amended Complaint, Plaintiff asserts a common law claim for unjust enrichment, also predicated on NAHB's alleged failure to provide her with an adequate incentive commission relative to the company's 2016 revenue totals. *See* Am. Compl. ¶¶ 54–59. Under District of Columbia law, unjust enrichment occurs where: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Smith v. Rubicon Advisors, LLC*, 254 F. Supp. 3d 245, 249 (D.D.C. 2017) (quoting *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008)). "The doctrine applies 'when a person retains a benefit (usually money) which in justice and equity belongs to another.'" *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 44 (D.D.C. 2019) (quoting *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016)).

At this stage of the litigation, the Court finds that Plaintiff has plausibly stated a claim for unjust enrichment. First, the Amended Complaint specifically alleges that Plaintiff provided services to NAHB that resulted in a royalty payment from Lowe's in 2016, valued at approximately $879,028.80. *See* Am. Compl. ¶¶ 23–24. Plaintiff further alleges that Lowe's made payments to NAHB on this sale in 2017, and that NAHB subsequently retained the revenue from this sale. *See id.* ¶ 25. Moreover, Plaintiff alleges that NAHB withheld from her a full commission payment of approximately $46,000 for the 2016 Lowe's sale. *Id.* ¶ 9. Instead, NAHB allegedly utilized that extra commission revenue for internal business purposes. *See id.* ¶ 57. At the pleading stage, these factual allegations plausibly satisfy the first two elements of unjust enrichment: Plaintiff

---

¶ 49. Given this uncertainty, any allegation that NAHB "owed" Plaintiff an incentive commission for revenue in 2017 is too speculative to plausibly state a claim under the DCWPCL for lost "wages." *See* D.C. Code § 13–1301(3); *Twombly*, 550 U.S. at 555–56.

allegedly conferred a monetary benefit upon NAHB through her services and, in turn, NAHB allegedly retained the monetary value of those services by withholding an adequate commission payment from her.  *See Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 30 (D.D.C. 2017).

Next, Plaintiff has also plausibly alleged that NAHB's "retention of th[is] benefit [was] unjust."  *Rubicon Advisors, LLC*, 254 F. Supp. 3d at 249.  Here, Plaintiff alleges that, pursuant to the 2016 Incentive Plan, *see* Def.'s Mot., Ex. 1 (2016 Incentive Plan), she expected to receive an incentive commission based upon all Affinity Programs sales revenue earned for NAHB in 2016, including the revenue from the 2016 Lowe's sale, *see, e.g.*, Am. Compl. ¶¶ 9, 40.  Plaintiff alleges, however, that her 2016 incentive commission from NAHB did not reflect the revenue she generated for NAHB from the 2016 Lowe's sale.  *See id.* ¶ 49.  Moreover, Plaintiff asserts that NAHB then terminated her "in bad faith" in August 2017, allowing NAHB to "wrongfully claim that she was ineligible" for any commissions on sales revenue NAHB might have accounted for in 2017.  *Id.* ¶ 58.  At the pleading stage, these factual allegations are sufficient to plausibly show that NAHB "unjustly" retained money that should have flowed to Plaintiff as compensation for her services generating revenue for NAHB.  *See JSC Transmashholding v. Miller*, 70 F. Supp. 3d 516, 523 (D.D.C. 2014) (refusing to entertain factual arguments regarding the "alleged injustice" when addressing an unjust enrichment claim at the pleading stage).  Accordingly, Plaintiff has sufficiently pled a claim for unjust enrichment that survives Defendant's present motion to dismiss.

On the issue of unjust enrichment, a few final points merit attention.  First, the plausibility of Plaintiff's unjust enrichment claim at the pleading stage is not inconsistent with the Court's finding that NAHB did not "owe" Plaintiff any commission under the discretionary terms of the 2016 Incentive Plan.  *See* D.C. Code § 13–1301(3).  Indeed, Defendant argues in a similar vein that because "the 2016 ICP does not support [Plaintiff's] claim of entitlement," she cannot state a

13

claim for unjust enrichment against NAHB. Def.'s Reply at 14. But the fact that NAHB was not *obliged* under the 2016 Incentive Plan to confer an incentive commission upon Plaintiff, does not necessarily defeat Plaintiff's unjust enrichment claim at the pleading stage. To the contrary, the unjust enrichment doctrine operates "in the absence of a contractual arrangement" so as to "provide relief in equity where circumstances are such that justice warrants a recovery as though there had been a promise." *Falconi-Sachs*, 142 A.3d at 556 (quotation omitted). The doctrine does not turn on a formal obligation between two parties, but instead more broadly "depends on whether it is fair and just for the recipient to retain the benefit" conferred. *4934, Inc. v. D.C. Dep't of Employment Servs.*, 605 A.2d 50, 56 (D.C. 1992). As such, the fact that the 2016 Incentive Plan did not compel NAHB to provide Plaintiff with a commission for the revenue she generated from the 2016 Lowe's sale, does not mean, in and of itself, that Plaintiff's labor in generating that alleged revenue did not confer value upon NAHB, which NAHB unjustly withheld from Plaintiff.

Lastly, the Court takes note of Defendant's argument that Plaintiff's unjust enrichment claim fails because Plaintiff did not actually confer a "benefit" upon NAHB. *See Rubicon Advisors, LLC*, 254 F. Supp. 3d at 249. Specifically, Defendant asserts that any "revenue generated by NAHB's Affinity Program is based upon the efforts of its members" and their "purchases of goods and services," not Plaintiff's own labor. Def.'s Mot. at 9; *see also* Def.'s Reply at 13. But this argument rests on Defendant's own assertion that Plaintiff's allegations regarding the value of her services are inaccurate, such as Plaintiff's factual allegation that in 2016 she generated $879,028.80 in revenue for NAHB by facilitating annual royalty payments from Lowe's "for the use of NAHB intellectual property." Am. Compl. ¶ 6. At the pleading stage, the Court's job is not to probe the accuracy of such factual allegations, but instead to determine whether this "factual matter, *accepted as true*," is sufficient "to 'state a claim to relief that is plausible on its face.'"

*Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*, 315 F. Supp. 3d 129, 143 (D.D.C. 2018) (emphasis added) (quoting *Iqbal*, 556 U.S. at 678).  Consequently, Defendant's argument that Plaintiff did not confer any benefit upon NAHB, as a factual matter, is unavailing at the pleading stage.

For the reasons set forth above, the Court finds that Plaintiff has sufficiently pled a claim for unjust enrichment against NAHB.  Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's claim for unjust enrichment in Count II of the Amended Complaint.

## IV.    CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court **GRANTS** Defendant's motion as to Plaintiff's DCWPCL claim in Count I of the Amended Complaint and **DISMISSES** that claim **WITH PREJUDICE**.  *See* Am. Compl. ¶¶ 37–53. The Court, however, **DENIES** Defendant's motion to dismiss Plaintiff's claim for unjust enrichment in Count II of the Amended Complaint.  *See id.* ¶¶ 54–59.  An appropriate Order accompanies this Memorandum Opinion.

**Date**: November 18, 2020                                            /s/
                                                                            **COLLEEN KOLLAR-KOTELLY**
                                                                            United States District Judge