**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTINA RONALDSON,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ASSOCIATION OF HOME BUILDERS,<br><br>Defendant. | Civil Action No. 19-1034 (CKK) |

**MEMORANDUM OPINION**
(September 2, 2026)

In this action, Plaintiff Christina Ronaldson alleges that her former employer, Defendant National Association of Home Builders of the United States ("NAHB"), unlawfully withheld some of the incentive compensation that it owed to her for work she performed in 2016 and 2017. Ms. Ronaldson asserts a statutory claim under the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, *et seq.*, and a common-law claim of unjust enrichment. NAHB has filed a motion for summary judgment, which Ms. Ronaldson opposes. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court concludes that NAHB is entitled to judgment on both of Ms. Ronaldson's claims. Accordingly, the Court shall **GRANT** NAHB's [134] Motion for Summary Judgment.

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:

- The Plaintiff's Second Amended Complaint, Dkt. No. 113;
- The Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment ("Def.'s Mem."), Dkt. No. 134-1;
- The Plaintiff's Sealed Opposition to the Defendant's Motion for Summary Judgment, as corrected on September 3, 2022 ("Pl.'s Opp'n"), Dkt. No. 152; and
- The Defendant's Reply in Support of its Motion for Summary Judgment ("Def.'s Reply"), Dkt. No. 154.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

## I. BACKGROUND

The Court has described the history of this case in three prior opinions. *See* Mem. Op., Dkt. No. 92; Mem. Op. & Order, Dkt. No. 119; Mem. Op. & Order, Dkt. No. 129. In summary, the Plaintiff, Ms. Ronaldson, alleges that her former employer, NAHB, unlawfully underpaid incentive compensation that it owed her for work that she performed in 2016 and 2017.

Ms. Ronaldson worked for several years for NAHB, a nonprofit that aims to promote homeownership and homebuilding. Ms. Ronaldson's role involved developing partnerships between NAHB and businesses in the homebuilding industry, which NAHB calls "affinity programs." Her compensation for this role included both a base salary and an annual commission.

NAHB provided Ms. Ronaldson with a written "Incentive Compensation Plan" that set out the terms of her incentive commission. *See* Aff. of Eileen Ramage ("Ramage Aff.") Ex. I, Dkt. No. 134-2 at 32–33. This plan provides, in relevant part, that "[i]ncentive commission will be paid as a percent of revenue and expenses attained in accordance with the established targets." *Id.* at 32. It further provides that the commission "will be paid on an annual basis after the CFO has completed the final accounting of all paid receipts" and that payment "will take place within a reasonable period of time after the CFO has closed out the fiscal year." *Id.* at 33. Finally, the plan provides that, "[to] receive the incentive payment, the recipient must be actively employed on the incentive distribution date." *Id.*

In 2016, which is the primary year at issue in this case, Ms. Ronaldson's incentive compensation plan used a specific affinity program revenue goal and certain set factors to decide the amount of her incentive commission. *See* Ramage Aff. ¶ 31, Dkt. No. 134-2 at 17. Her net revenue goal was approximately $760,000. *Id.* If net revenue from NAHB's affinity programs reached this goal, Ms. Ronaldson would receive a bonus payment of $15,000. *Id.* If net revenue

from these programs exceeded this goal, Ms. Ronaldson would receive $15,000, plus about 2.36% of the net affinity program revenue that NAHB received beyond the goal. *Id.*

Based on these calculations, Ms. Ronaldson received a commission payment of $26,010.86 for fiscal year 2016, which reflected a $15,000 bonus for reaching NAHB's net revenue goal for its affinity programs, plus a further $11,010.86 bonus based on the amount by which NAHB's recorded net revenue exceeded the goal. *See* Ramage Aff. ¶ 31, Dkt. No. 134-2 at 17.

NAHB terminated Ms. Ronaldson's employment on August 18, 2017, citing performance concerns, which it said Ms. Ronaldson had not adequately addressed after several months under a performance improvement plan. *See* Ramage Aff. Ex. B, Dkt. No. 134-2 at 21. Ms. Ronaldson did not receive a commission payment for fiscal year 2017 because she was no longer an NAHB employee at the time those payments were distributed. *Id.* ¶ 34, Dkt. No. 134-2 at 17. Instead, that year, NAHB paid a commission to Ms. Ronaldson's successor, whom NAHB had agreed to compensate with both a higher base salary than it had paid Ms. Ronaldson and a higher incentive commission factor than had been provided to Ms. Ronaldson. *See* Def.'s Resp. to Pl.'s Stmt. of Genuine Issues ¶¶ 101–10, Dkt. No. 154-1 at 30–32.

This case is primarily about the calculation of Ms. Ronaldson's commission payments associated with royalties that NAHB received from Lowe's Companies, Inc. ("Lowe's") for sales during NAHB's 2016 fiscal year. When NAHB closed its books for fiscal year 2016, which it did on or about March 1, 2017, NAHB recorded about $672,000 in royalties from Lowe's for sales completed in 2016, based on an estimate of the total payments that it would eventually receive. Ramage Aff. ¶¶ 27, 30, Dkt. No. 134-2 at 16. Later, in May and June 2017, NAHB received payments from Lowe's for 2016 sales totaling more than $879,000, exceeding its initial estimate by about $200,000. *Id.* ¶ 28, Dkt. No. 134-2 at 16.

Because NAHB uses the "accrual" method of accounting when preparing its financial statements, NAHB later revised its 2016 financial statements to reflect the actual royalty payments from Lowe's associated with that year's sales. Ramage Aff. ¶ 12, Dkt. No. 134-2 at 14; Aff. of Susan Colladay ("Colladay Aff.") ¶ 23, Dkt. No. 155 at 5. This revision resulted, at least in part, from a confidential complaint submitted to a compliance hotline maintained by NAHB's auditor. *See* Colladay Aff. ¶¶ 8–12, 18–23. Although NAHB revised its financial statements to include these payments, it did not make a corresponding adjustment to the incentive commission amounts that it paid out for fiscal year 2016. *See* Ramage Aff. ¶ 29, Dkt. No. 134-2 at 16.

After her termination, Ms. Ronaldson filed this suit against NAHB, alleging that it underpaid incentive compensation that it owed to her for the 2016 and 2017 fiscal years. Specifically, Ms. Ronaldson now alleges that NAHB improperly failed to credit her for the full amount of the 2016 royalty payments from Lowe's. *See* Second Am. Compl, Dkt. No. 113, ¶¶ 54, 57, 59. Based on NAHB's actual receipts from Lowe's for 2016 sales, Ms. Ronaldson alleges that she should have received $20,818.00 in added incentive commission payments for fiscal year 2016. *Id.* ¶ 52. Ms. Ronaldson also alleges that NAHB should have paid her an incentive commission for fiscal year 2017. *See id.* ¶¶ 57, 59.

NAHB moved to dismiss this action for failure to state a claim. Def.'s Mot., Dkt. No. 43. This Court granted that motion in part and denied it in part, but later granted partial reconsideration and allowed Ms. Ronaldson to amend her complaint. *See* Mem. Op., Dkt. No. 92; Mem. Op. & Order, Dkt. No. 119. The Defendants then filed a renewed motion to dismiss or, in the alternative, for judgment on the pleadings, which this Court denied. *See* Def.'s Mot., Dkt. No. 122; Mem. Op. & Order, Dkt. No. 129.

The parties have now completed discovery, and NAHB has moved for summary judgment. Def.'s Mot., Dkt. No. 134. NAHB argues that the commission payments at issue are not "wages" within the meaning of the DCWPCL; that Ms. Ronaldson received all the payments that were due to her under the terms of her 2016 incentive compensation plan; that she was not eligible to receive an incentive commission for fiscal year 2017 because she was not an NAHB employee at the time that those payments were distributed; and that NAHB did not unjustly retain any benefit from the royalty payments at issue. *Id.*

Ms. Ronaldson opposes the Defendant's motion. Pl.'s Opp'n, Dkt. No. 152. She argues that her commission payments are properly considered "wages" under the DCWPCL, that her commission under the 2016 incentive compensation plan should have included compensation for payments that NAHB received from Lowe's after closing its books for the 2016 fiscal year, that NAHB terminated her employment in bad faith, and that it wrongfully credited her successor with commission payments for some of the Lowe's royalty payments that NAHB earned in 2016. *Id.*

NAHB's motion is ripe for decision.

## II. LEGAL STANDARD

A movant is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). "[T]he district court is not 'obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material disputed fact.'" *Potter v. District of Columbia*, 558 F.3d 542, 550 (D.C. Cir. 2009) (quoting *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).

When resolving a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Anderson*, 477 U.S. at 255; *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007). If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). The district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. In this regard, the non-movant must

"do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## III. ANALYSIS

Despite the parties' submission of a voluminous record spread across dozens of exhibits and thousands of pages, many of which are dense with financial information and business records that are not material to Ms. Ronaldson's claims, the operative facts can be stated relatively simply.

Ms. Ronaldson participated in an incentive compensation plan that made her eligible to earn a commission "on an annual basis," payable "after the CFO ha[d] completed the final accounting of all paid receipts" and "closed out the fiscal year." Ramage Aff. Ex. I, Dkt. No. 134-2 at 33. To be eligible to receive a commission payment, Ms. Ronaldson was required "to be actively employed on the incentive distribution date." *Id.* Ms. Ronaldson received an incentive commission for fiscal year 2016 based on the amount of royalty payments NAHB had recognized and recorded by the time it closed its books for the 2016 fiscal year. *Id.* at 31. She did not receive a commission for fiscal year 2017 because NAHB terminated her employment before the distribution date for that year's commission payments. *See* Ramage Aff. ¶ 34, Dkt. No. 134-2 at 17; *id.* Ex. B, Dkt. No. 134-2 at 21.

The payments that Ms. Ronaldson received were consistent with the terms of her incentive compensation plan, and she has not identified any facts in the record from which a reasonable jury could conclude that these payments resulted in the unjust enrichment of NAHB.

Accordingly, for the reasons explained in this Memorandum Opinion, NAHB is entitled to judgment as a matter of law on both of Ms. Ronaldson's operative claims.

### A. The Court assumes, without deciding, that the record supports categorizing Ms. Ronaldson's commission payments as "wages" under the DCWPCL.

The parties each begin their submissions with arguments about whether Ms. Ronaldson's commission payments are "wages" subject to the requirements of the DCWPCL. *See* Def.'s Mem. at 3–8; Pl.'s Opp'n at 35–38.

The DCWPCL defines "wages" to include a "[c]ommission" that is "owed by an employer." D.C. Code § 32-1301(3). When resolving Ms. Ronaldson's motion for leave to amend her complaint, this Court previously concluded that Ms. Ronaldson's Second Amended Complaint plausibly alleges that the commission payments at issue here are "wages," notwithstanding language in Ms. Ronaldson's incentive compensation plan stating that "[m]anagement reserve[d] the right to amend, modify or discontinue" the plan "at any time." *See* Mem. Op. & Order, Dkt. No. 119 at 6–8; Def.'s Ex. I, Dkt. No. 134-2 at 32. The Court reached this conclusion because Ms. Ronaldson alleged in her Second Amended Complaint that "neither [she] nor NAHB anticipated or intended that NAHB would modify or terminate [her] ICP once it was put in place." Mem. Op. & Order, Dkt. No. 119 at 7–8. Accepting this allegation as true for purposes of resolving the pleading-stage motions that were then pending, the Court concluded that Ms. Ronaldson had plausibly alleged that NAHB "owed" her a commission, bringing this case within the scope of the DCWPCL. *Id.* at 8 (citing *Rothberg v. Xerox Corp.*, No. 12-cv-0617, 2016 WL 10953882, at *19 (D.D.C. Feb. 3, 2016) (BAH), *aff'd*, 709 F. App'x 1 (D.C. Cir. 2017)).

The Defendants now argue that the summary judgment record shows that Ms. Ronaldson's incentive commission payments are not, in fact, "wages," because the evidence shows that the payments are discretionary and therefore not truly "owed" to Ms. Ronaldson in the relevant sense. *See* Def.'s Mem. at 3–8.

Ms. Ronaldson disagrees and contends that the Court's ruling allowing her to amend her DCWPCL claim should preclude NAHB from arguing that the payments she seeks are not "wages." Pls.' Opp'n at 34–38.

The Court need not settle this disagreement to resolve NAHB's motion. For the reasons explained in the following sections, the Court concludes that even if Ms. Ronaldson's commission payments are within the scope of the DCWPCL, NAHB is entitled to summary judgment on the grounds that Ms. Ronaldson received all of the commission payments from NAHB to which she is entitled. Accordingly, the Court shall assume, without deciding, that the record would support a finding that Ms. Ronaldson's commission payments are "wages" under the DCWPCL. *See PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J.) ("[I]f it is not necessary to decide more, it is necessary not to decide more.").

**B. There is no genuine dispute that NAHB paid Ms. Ronaldson a commission that was consistent with her 2016 incentive compensation plan.**

The record shows that Ms. Ronaldson received an incentive commission payment of $26,010.86 in June 2017 that was consistent with her 2016 incentive compensation plan. *See* Ramage Aff. Ex. I, Dkt. No. 134-2 at 31–33. NAHB calculated the amount of this payment based on royalty payments that it had recorded by the time it closed its books for the fiscal year in early March 2017, including more than $672,000 in estimated royalty payments that it expected to receive from Lowe's. *Id.* ¶¶ 29–30, Dkt. No. 134-2 at 16.

Ms. Ronaldson presents three challenges to NAHB's evidence regarding her 2016 incentive compensation plan. First, she disputes NAHB's assertion that it closed its books for the year in early March 2017, before receiving the full amount of its royalty payments from Lowe's. Pl.'s Opp'n at 25–27, 44. Second, she argues that NAHB should have done more to collect full payment from Lowe's before closing its books. *Id.* at 46–49. Third, she suggests that NAHB's

decision to revise its financial statements for fiscal year 2016 should have led it to pay her an additional commission. *See id.* at 16, 35. None of these arguments creates a genuine issue of material fact for trial.

Ms. Ronaldson's assertion that NAHB did not actually close its books for the year in early 2017 lacks support. Rather than offer relevant, admissible evidence of her own on this point, Ms. Ronaldson attacks the credibility of NAHB's affiant. *See* Pl.'s Opp'n at 44–45; *see also* Def.'s Reply at 9 (explaining that Ms. Ronaldson's evidence that NAHB recognized revenue received later in March 2017 in its 2016 financials is not relevant to establish when NAHB closed its books because NAHB generally recognized revenue when it was accrued, not when it was received). This credibility attack is misguided and unavailing. "[I]t is well settled that a party may not defeat a properly supported motion for summary judgment merely by raising generalized questions as to the credibility of the movant's affiants." *Robinson v. Cheney*, 876 F.2d 152, 162 (D.C. Cir. 1989). Similarly, conclusory assertions offered without any factual basis in the record are insufficient to overcome a summary judgment motion. *See Ass'n of Flight Attendants-CWA*, 564 F.3d at 465–66. In the absence of admissible evidence to the contrary, the Court concludes that there is no genuine dispute that NAHB closed its books in early March 2017. *See* Fed. R. Civ. P. 56(e) (providing that when "fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion").

The Court is also unpersuaded by Ms. Ronaldson's argument that a covenant of good faith implicit in her incentive compensation plan obligated NAHB to do more to collect payment from Lowe's before closing its books for the year. *See* Pl.'s Opp'n at 46–49; *see also* Second Am. Compl. ¶¶ 49–50, 55. Ms. Ronaldson has failed to identify any admissible evidence in the record that would allow a reasonable jury to find that NAHB acted other than in good faith in collecting

these payments. *Cf.* Pl.'s Opp'n at 46–49. The record shows that it was a normal practice for NAHB to receive payment from Lowe's sometime in the first half of the year following the year in which the sales occurred. *See* Ramage Aff. ¶ 25, Dkt. No. 134-2. For example, for fiscal year 2015, NAHB received payment from Lowe's in April 2016. *Id.* The record also shows that in fiscal year 2016, Ms. Ronaldson worked alongside other NAHB employees to facilitate payment from Lowe's, acknowledging in one email dated March 3, 2017, that she knew Lowe's was "still finalizing" the payment amount. *See* Dkt. No. 146 at 74. In another sequence of emails in April 2017, Ms. Ronaldson shared a list of invoice totals, which she said that Lowe's staff had confirmed, then asked the colleague to "be patient" with the Lowe's team because of a recent round of layoffs affecting the company. *See id.* at 65–67. Against this record, Ms. Ronaldson has not identified any evidence from which a reasonable factfinder could conclude that NAHB was intentionally dilatory in collecting its payment from Lowe's for fiscal year 2016. Accordingly, the Court concludes that there is no genuine issue of material fact regarding NAHB's efforts to collect payment from Lowe's for sales completed in fiscal year 2016.

Finally, the Court is unpersuaded by the suggestion that Ms. Ronaldson's incentive compensation plan required NAHB to pay her an additional commission after it decided to revise its financial statements for fiscal year 2016. *See* Pl.'s Opp'n at 16, 35; *see also* Second Am. Compl. ¶¶ 31–32. As the Court understands Ms. Ronaldson's argument on this point, the contention is that after NAHB decided to revise its financial statements for 2016 to reflect the full amount of the royalty payments that it eventually received from Lowe's for sales in that year, NAHB should have paid Ms. Ronaldson an additional commission on the royalties it received in excess of its initial estimates. *See* Ramage Aff. ¶¶ 27–30, Dkt. No. 134-2 at 16; Calladay Aff. ¶ 23, Dkt. No. 155 at 5. However, nothing in the terms of Ms. Ronaldson's incentive compensation plan requires

this interpretation, and multiple terms suggest that an additional commission under these circumstances is neither contemplated nor required. *See* Ramage Aff. Ex. I, Dkt. No. 134-2 at 32–33. For example, the plan provides that payment will be made "after the CFO has completed the final accounting of all paid receipts" and "will take place within a reasonable period of time after the CFO has closed out the fiscal year," suggesting that the commission payment is tied to the initial closing of the books rather than any later revisions of NAHB's financial statements. *See id.* at 33. The plan also refers to "the incentive distribution *date*," suggesting a single date for a commission payment that is close in time to the closing of the books, rather than multiple payments that may be distributed over time as NAHB updates and revises its financials. *See id.* (emphasis added). These terms are consistent with a plan designed to give employees some measure of predictability in when they will receive incentive commissions, avoiding uncertainties or delays that might occur if payments were anchored to the finalization of audited financial statements. Given the presence of these terms and the absence of any provision requiring NAHB to use a particular method to determine the amount of net revenue or to anchor that figure in NAHB's audited financial statements, the Court concludes that there is no genuine dispute of material fact that Ms. Ronaldson's incentive compensation plan did not require NAHB to pay her an additional commission after it revised its financial statements for fiscal year 2016. *See id.*

For these reasons, the Cout concludes that there is no genuine dispute of material fact that NAHB paid Ms. Ronaldson in accordance with the terms of her 2016 incentive compensation plan.

**C. There is no genuine dispute that Ms. Ronaldson's incentive compensation plan did not entitle her to a 2017 incentive commission payment because she was not an NAHB employee at the time that NAHB distributed those payments.**

The record shows that Ms. Ronaldson did not receive an incentive commission payment for fiscal year 2017 because she was not an NAHB employee at the time those payments were distributed. *See* Ramage Aff. ¶ 34, Dkt. No. 134-2 at 17; *id.* Ex. B, Dkt. No. 134-2 at 21.

Ms. Ronaldson's incentive compensation plan provided that, "[to] receive [an] incentive payment, the recipient must be actively employed on the incentive distribution date." *Id.* Ex. I, Dkt. No. 134-2 at 33. NAHB paid incentive commissions for fiscal year 2017 in 2018, months after Ms. Ronaldson's termination in August 2017. *See* Ramage Aff. ¶¶ 10, 34, Dkt. No. 134-2 at 14, 17; *id.* Ex. B, Dkt. No. 134-2 at 21.

Ms. Ronaldson has not identified any admissible evidence in the record that would allow a reasonable jury to conclude that her incentive compensation plan required NAHB to pay her a commission for fiscal year 2017, notwithstanding the unambiguous provision in the plan providing that payments would be made only to active employees. Accordingly, there is no genuine dispute of material fact that NAHB's decision not to pay Ms. Ronaldson an incentive commission for fiscal year 2017 was consistent with the express terms of the operative incentive compensation plan.

**D. Because there is no genuine dispute that Ms. Ronaldson received the payments that were due to her under the terms of her incentive compensation plans, NAHB is entitled to judgment as a matter of law.**

1. <u>NAHB is entitled to judgment on Ms. Ronaldson's DCWPCL claim.</u>

To prevail on her claim under the DCWPCL, Ms. Ronaldson must show that she is "owed" unpaid "wages" by NAHB. *See* D.C. Code §§ 32-1301(3) (defining "wages"), 32-1302 (requiring payment of "all wages"); *see also id.* § 32-1308(a)(1)(A) (providing that "a person aggrieved by a violation" of the DCWPCL "may bring a civil action" to recover, among other things, "payment of any back wages unlawfully withheld").

Before explaining why NAHB is entitled to judgment on this claim, the Court briefly addresses two of NAHB's arguments on which the Court does not rely, both of which sweep more broadly than is necessary to resolve this case.

*First*, as explained above, *supra* Section III.A, the Court assumes, without deciding, that the commission payments at issue are "wages" under the DCWPCL. Accordingly, the Court does

not rely on NAHB's defense that these commission payments are not "wages" subject to the law's provisions. *Cf.* Def.'s Mem. at 4–8.

*Second*, consistent with the 2014 amendments to the DCWPCL providing that an employee may "pursue [the] balance of unpaid wages" under the DCWPCL and a recent decision of the D.C. Court of Appeals reaffirming the same, this Court interprets the DCWPCL to allow an action for payment of disputed wages, regardless of whether an employer previously paid an undisputed portion. *See* Wage Theft Prevention Amendment Act of 2014, D.C. Law 20-157, § 2(c), 61 D.C. Reg. 10157 (codified at D.C. Code § 32-1304, eff. Feb. 26, 2015); *Shea Yeleen Health & Beauty, LLC v. Off. of Wage-Hour*, 343 A.3d 551, 553–54 (D.C. 2025). Therefore, the Court does not rely on NAHB's defense that it timely paid the undisputed portion of the amounts at issue or the authorities that NAHB offers in support of that defense, none of which addressed the 2014 amendments to the DCWPCL. *Cf.* Def.'s Mem. at 11–12 (citing *Fudali v. Pivotal Corp.*, 310 F. Supp. 2d 22, 29 (D.D.C. 2004) (EGS); *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 92 n.7 (D.D.C. 2014) (RC); *Iraheta v. Magic Meals, Inc.*, 201 F. Supp. 3d 172, 174 (D.D.C. 2016) (RMC), *vacated on other grounds*, No. 15-cv-1121, 2017 WL 1086625, at *1 (D.D.C. Feb. 22, 2017) (RMC)); *cf. also id.* at 8 (citing *Chan Chan v. Children's National Medical Center*, No. 18-cv-2102, 2019 WL 4471789, at *4 (D.D.C. Sept. 18, 2019) (CKK)).

These preliminaries aside, the issue before the Court is straightforward. As the Court has explained, there is no genuine dispute of material fact that NAHB paid Ms. Ronaldson an incentive commission for fiscal year 2016 in accordance with the terms of her 2016 incentive compensation plan and that NAHB's decision not to pay her an incentive commission for fiscal year 2017 was consistent with the express terms of that plan. *See supra* Sections III.B–C. Accordingly, no reasonable jury could conclude that NAHB owes Ms. Ronaldson unpaid wages in connection with

her incentive compensation plan, as would be required to support her DCWPCL claim. D.C. Code §§ 32-1301(3), 32-1302.

Ms. Ronaldson also argues that her 2016 incentive compensation plan is "enforceable as a matter of basic, long-standing contract law." Pl.'s Opp'n at 38–39. However, as NAHB correctly notes, Ms. Ronaldson did not assert a freestanding claim for breach of contract in her operative complaint, and she cannot now raise such a claim through arguments in response to a motion for summary judgment. *See* Def.'s Reply at 9–10; *cf.* Second Am. Compl, Dkt. No. 113. "It is well-established that a party may not amend its complaint or broaden its claims through summary judgment briefing." *Pinson v. U.S. Dep't of Just.*, 61 F. Supp. 3d 164, 179 n.10 (D.D.C. 2015) (RC) (collecting cases). Even if the Court were to entertain this claim, it would fail for the same reasons as Ms. Ronaldson's DCWPCL claim: By its express terms, Ms. Ronaldson's incentive compensation plan does not obligate NAHB to pay her any additional commission beyond what it has already paid. Accordingly, Ms. Ronaldson's assertions regarding a purported breach of contract do not alter the analysis of her DCWPCL claim or entitle her to relief.

For these reasons, NAHB is entitled to judgment on Ms. Ronaldson's DCWPCL claim as a matter of law.

2. <u>NAHB is entitled to judgment on Ms. Ronaldson's unjust enrichment claim.</u>

To prevail on an unjust enrichment claim under D.C. law, Ms. Ronaldson must show (1) that she "conferred a benefit on" NAHB; (2) that NAHB "retains the benefit"; and (3) that, "under the circumstances," NAHB's "retention of the benefit is unjust." *Smith v. Rubicon Advisors, LLC*, 254 F. Supp. 3d 245, 249 (D.D.C. 2017) (RC) (quoting *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008)). This doctrine applies "when a person retains a benefit (usually money) which in justice and equity belongs to another." *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 44 (D.D.C. 2019) (BAH) (quoting *Falconi-Sachs v. LPF Senate Square, LLC*,

142 A.3d 550, 556 (D.C. 2016)). However, unjust enrichment is an equitable, quasi-contract theory that will not displace the terms of an actual contract. If "the parties have a contract governing an aspect of [their] relation," a party cannot recover on an unjust-enrichment theory as to that subject because "a court will not displace the terms of that contract and impose some other duties not chosen by the parties." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) (quoting *Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996)).

For purposes of analysis, the Court will assume, without deciding, that the record supports the conclusion that Ms. Ronaldson conferred a benefit on NAHB through her work on the Lowe's partnership and that NAHB retained that benefit. Even under these assumptions, NAHB is entitled to judgment on Ms. Ronaldson's unjust enrichment claim for two related reasons.

*First*, if—as Ms. Ronaldson argues—the 2016 incentive compensation plan is an enforceable contract that bound NAHB to pay Ms. Ronaldson a specific amount for her work on the Lowe's partnership, the existence of that contract precludes the recognition of an unjust enrichment claim addressing the same subject. *See In re APA Assessment Fee Litig.*, 766 F.3d at 46. A plaintiff like Ms. Ronaldson may present both unjust enrichment and breach of contract claims as alternative theories at the pleading stage. *See Smith*, 254 F. Supp. 3d at 250. However, the two theories are ultimately "mutually exclusive," and a plaintiff "cannot prevail on both claims" related to the same subject matter. *Hughes v. Abell*, 867 F. Supp. 2d 76, 98 (D.D.C. 2012) (JDB). Accordingly, if the 2016 incentive compensation plan is an enforceable agreement, Ms. Ronaldson cannot prevail on an unjust enrichment claim addressed to the subject matter covered in that agreement.

*Second*, if the 2016 incentive compensation plan is *not* an enforceable agreement, NAHB is entitled to judgment as a matter of law on the grounds that its retention of the benefits it gained

from Ms. Ronaldson's work as an employee is not unjust. Put simply, "[i]t is not unjust for an employer to retain the benefits from an employee doing their job well." *Sobot v. Clean the World Found. Inc.*, No. 22-cv-1846, 2024 WL 4119389, at *5 (D.D.C. Sept. 9, 2024) (TSC). It is undisputed that NAHB employed Ms. Ronaldson to develop partnerships like its partnership with Lowe's. *See* Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 4, Dkt. No. 143-2 at 2. It is also undisputed that Ms. Ronaldson received the full amount of her salary throughout her employment, as well as sizeable incentive commissions for the business that she generated. *Id.* ¶¶ 8, 52–55, 67 Dkt. No. 143-2 at 2, 10, 67. Finally, this Court has concluded there is no genuine dispute of fact that NAHB paid Ms. Ronaldson a commission for fiscal year 2016 that was consistent with the express terms of her incentive compensation plan. *See supra* Section III.B. On these facts, no reasonable factfinder could conclude that NAHB has been unjustly enriched at Ms. Ronaldson's expense through its handling of her incentive commission for Lowe's 2016 sales. *See Rothberg v. Xerox Corp.*, No. 12-cv-617 (BAH), 2016 WL 10953882, at *20–21 (D.D.C. Feb. 3, 2016) (BAH) (concluding that it was not "unjust" for an employer to fail to pay a commission to which the plaintiff was not contractually entitled), *aff'd*, 709 F. App'x 1 (D.C. Cir. 2017).

Finally, Ms. Ronaldson argues that the Court should find unjust enrichment by NAHB because NAHB acted in bad faith when it terminated her employment. *See* Pl.'s Opp'n at 49–50; Second Am. Compl. ¶ 59.[2] This argument is unavailing.

As the Court has already explained in the context of Ms. Ronaldson's arguments regarding a purported breach of contract, Ms. Ronaldson cannot assert a new claim in her arguments in opposition to a motion for summary judgment. *See Pinson*, 61 F. Supp. 3d at 179 n.10. Because Ms. Ronaldson's Second Amended Complaint does not assert a standalone claim of wrongful

[2] There are two paragraphs numbered 59 in Ms. Ronaldson's Second Amended Complaint. Both are relevant here.

termination, she cannot inject such a claim into this case in her summary judgment brief after discovery has concluded. *See id.*

Meanwhile, construing Ms. Ronaldson's allegations of bad-faith or wrongful termination as merely subsidiary to her claim of unjust enrichment, these allegations are insufficient to support her claim. Ms. Ronaldson has not offered any evidence from which a reasonable jury could conclude that she was terminated for a legally impermissible reason, such as discrimination on the basis of a protected characteristic. *See Davis v. Gables Residential/H.G. Smithy*, 525 F. Supp. 2d 87, 101–02 (D.D.C. 2007) (CKK) (explaining the limited grounds on which an at-will employee may maintain a wrongful termination claim under D.C. law); *see also Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991) (explaining that, in general, "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all"). In the absence of such evidence or another supported reason to find that it was unjust for NAHB to retain of the benefits of Ms. Ronaldson's work following her termination, no reasonable factfinder could conclude that Ms. Ronaldson's termination resulted in the unjust enrichment of NAHB.

For these reasons, NAHB is entitled to judgment on Ms. Ronaldson's unjust enrichment claim as a matter of law.

* * *

The record shows that Ms. Ronaldson did valuable work for NAHB. The record also shows that NAHB compensated her for that work in accordance with the terms of her incentive compensation plan. Although NAHB could reasonably have decided to calculate Ms. Ronaldson's incentive commission differently, Ms. Ronaldson has not identified evidence from which a reasonable factfinder could conclude that it had a legal obligation to do so. Accordingly, the Court concludes that there are no genuine issues of material fact for trial and that NAHB is entitled to

judgment as a matter of law on both Ms. Ronaldson's statutory claim under the DCWPCL and her common-law claim of unjust enrichment.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** the Defendant's [134] Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.

**Dated:** September 2, 2026

COLLEEN KOLLAR-KOTELLY
United States District Judge